## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### BECKLEY DIVISION

ERIE INSURANCE PROPERTY
AND CASUALTY COMPANY,

                Plaintiff,

v.                                           CIVIL ACTION NO.  5:05-cv-01137

JUANITA SMITH, et al.,

                Defendants.

### OPINION & ORDER

This is an action for declaratory relief brought by the plaintiff, Erie Insurance Property and Casualty Company ("Erie") against its policy holders, Kenneth and Gwendolyn Cooper ("the Coopers") pursuant to 28 U.S.C. § 2201 and 28 U.S.C. § 1332. Specifically, Erie seeks a declaration that it is not obligated to indemnify or defend the Coopers for any losses incurred as a result of a lawsuit brought against them by Juanita Smith, the purchaser of the Coopers' condominium.

Before this Court are defendant's motion to dismiss for lack of subject-matter jurisdiction [Docket No. 11], plaintiff's response [Docket No. 13], defendant's supplemental memorandum of law in support of their motion [Docket No. 20] and plaintiff's response thereto [Docket No. 21]. In short, the Coopers assert that Erie has failed to demonstrate that the amount-in-controversy exceeds the $75,000 jurisdictional floor.[1]

---

[1] 28 U.S.C. § 1332(a)(1) states "The District Court shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum value of $75,000, exclusive of interest and costs, and is between . . . citizens of different states."

**I. FACTS**

The facts are limited for the purpose of this jurisdictional inquiry. The Coopers, residents of Beckley, West Virginia and Erie Insurance Company, a Pennsylvania corporation, executed a "Homeowners Condocover Insurance Policy," policy number Q54 6200363, on June 12, 2004 for a term of one year (hereinafter "the policy"). [Docket No. 1 Ex. 1 p.1]. This condominium insurance policy provided, in relevant part, that the Coopers would be indemnified for any occurrence that triggered coverage under the policy, with a policy limit of $300,000 for each occurrence. Id.

On April 29, 2004, Juanita Smith entered into a contract of sale with the Coopers for the purchase of the Coopers' condominium located at 606 Sapphire Lane in Beckley, West Virginia. [Docket No. 1 Ex. 1 p.39]. At that time, the Coopers executed a "Seller's Property Disclosure Statement," which stated that the Coopers had no knowledge of "any leaks, backups, or other problems relating to any plumbing, water, and sewage related items." [Docket No. 1 Ex. 1 p.40]. On June 1, 2004, the Coopers and Juanita Smith executed the deed of conveyance and Ms. Smith became the owner of 606 Sapphire Lane.

Soon thereafter, Ms. Smith filed a complaint in the Circuit Court of Raleigh County, West Virginia, alleging, *inter alia*, that the Coopers intentionally failed to disclose to her certain defects during the sale of 606 Sapphire Lane ("Smith lawsuit"). [Docket No. 1 Ex. 1 p.43-44]. Specifically, Ms. Smith alleged that the "plumbing pipes and components beneath the condominium unit were installed with an improper backfall" and "the surface water runoff on the exterior of the condominium unit caused flooding in the condominium unit." [Docket No. 1 p.3 ¶ 15]. The Smith complaint seeks $4,925.59 in special damages, an unspecified damage award for annoyance and

inconvenience, punitive damages, and attorneys fees and costs. [Docket No. 1 Ex. 1 p. 42 ¶¶ 22-27]. Once on notice of the Smith lawsuit, the Coopers forwarded the Smith complaint to Erie, requesting that Erie provide a defense and indemnify them for any liability they might incur as a result of the Smith lawsuit.

On December 9, 2005, Erie filed this declaratory judgment action. In sum, Erie seeks a declaration that it is not obligated to defend or indemnify the Coopers because the factual predicate of the Smith lawsuit does not allege an "occurrence" that would trigger coverage under the Coopers' policy. [Docket No. 1 ¶ 43]. On January 30, 2006, the defendants filed the instant motion to dismiss for lack of subject-matter jurisdiction. [Docket No. 11].

## II. STANDARD OF REVIEW

When a defendant challenges the factual basis for diversity jurisdiction under Rule 12(b)(1), the plaintiff bears the burden of proving subject-matter jurisdiction. Richmond, Fredericksburg, & Potomac R.R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991). Although the proponent of jurisdiction may be called on to prove facts that determine the amount-in-controversy, once these facts have been established, the proponent's estimate of the claim's value must be accepted unless there is a "legal certainty" that the controversy is below the statutory threshold. See St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 288-89 (1938); Friedman's Inc. v. Dunlap, 290 F.3d 191, 191 (4th Cir. 2002). The trial court must apply the standard applicable to a motion for summary judgment, under which the nonmoving party must set forth specific facts beyond the pleadings that are based on more than mere speculation or the building of one inference upon another. Harleysville Mut. Ins. Co. v. Packer, 60 F.3d 1116, 1119-20 (4th Cir. 1995). In determining whether jurisdiction exists, the district court regards the allegations contained in the

pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment. Richmond, Fredericksburg, & Potomac R.R. Co., 945 F.2d at 768. The moving party should prevail only if the material jurisdictional facts are not in dispute and the moving party is entitled to judgment as a matter of law. Id. (quoting Trentacosta v. Frontier Pac. Aircraft Indus., 813 F.2d 1553, 1558 (9th Cir. 1987).

### III. ANALYSIS

The Declaratory Judgement Act ("Act") does not confer jurisdiction on the federal courts. Jones v. Harper, 55 F. Supp. 2d 530, 531 n.1 (S.D. W. Va. 1999) (citing 10B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure, § 2766 (3rd ed. 1998)). Thus, a party seeking declaratory judgment must first establish an independent basis for subject-matter jurisdiction before the court can address the substantive request for relief. Id. The parties do not contest diversity of citizenship and the record reveals that diversity indeed exists.[2] Thus, the Court will limit its inquiry to whether the amount-in-controversy exceeds the jurisdictional floor of $75,000.

In its initial pleading, Erie asserts that the amount-in-controversy exceeds $75,000.01 because the coverage limit of the subject policy is $300,000. [Docket No. 1 ¶ 7]. Defendants contest this assertion, responding that the underlying value of their insurance claim to Erie controls the amount-in-controversy, not the value of the policy itself. [Docket No. 12 p.2 ¶ 2]. Specifically, the Coopers argue that any defense and indemnification provided by Erie with respect to the Smith lawsuit cannot exceed the amount-in-controversy requirement because the Smith Complaint seeks only $4,925.59 in special damages. [Docket No. 12 p.2 ¶ 1]. The Smith Complaint, however, also

---

[2] According to the Complaint, Erie is a corporation with its principal place of business in Pennsylvania [Docket No. 1 ¶ 2] and the Coopers and Juanita Smith are residents of Beckley, West Virginia [Docket No. 1 ¶ 3-6].

seeks an unspecified amount of general damages for annoyance and inconvenience, as well as punitive damages and attorneys costs and fees. According to the Coopers, there is no possible scenario where the costs incurred as a result of the Smith lawsuit could rise to the level of the requisite jurisdictional amount. [Docket No. 12 p.3 ¶ 1].

  A. <u>The Amount-in-Controversy Requirement</u>

  In a declaratory judgment action, the amount-in-controversy is not always clear. Such is the case here, where the coverage limit of the policy far exceeds the specified damages sought in the Smith Complaint for which the Coopers seek indemnification. In addition, Smith seeks an unspecified amount of damages against the Coopers for her annoyance and inconvenience that further obscures the inquiry. [Docket No. 1 ¶ 7].

  When faced with a declaratory judgment action that does not clearly satisfy the amount-in-controversy requirement, the court should measure "the value of the object of the litigation." <u>Toler v. State Farm Mut. Auto. Ins.</u>, 25 Fed. Appx. 141, 143 (4th Cir. 2001) (quoting <u>Hunt v. Washington State Apple Adver. Comm'n</u>, 432 U.S. 333, 347 (1977). Here, Erie seeks a declaration that it is not obligated to indemnify the Coopers or defend against the Smith lawsuit because the policy at issue does not provide coverage for an insured who negligently or intentionally fails to disclose a defect during the sale of an insured's home. [Docket No. 1 p.4 ¶¶ 24-27]. Thus, Erie seeks a declaration that it is not obligated to indemnify or defend the Coopers because the factual predicate of the Smith lawsuit does not allege an "occurrence" that triggers coverage under the Coopers' policy. <u>Id.</u>

  Where a party seeks a declaration that a particular insured's loss is exempted from coverage, as opposed to the validity of the policy itself, the amount-in-controversy is the value of the underlying claim, not the face value of the policy. <u>Darbet, Inc. v. Bituminous Cas. Co.</u>, 792 F. Supp.

487, 488 (S.D. W. Va. 1992) (citing Mut. Life Ins. Co. v. Moyle, 116 F.2d 434, 436 (4th Cir. 1940); see Hartford Ins. Co. v. Lou-Con Inc., 293 F.3d 908, 911 (5th Cir. 2002); see also 14A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure, § 3710 (3rd ed. 1998) ("[i]n the context of a declaratory judgment action calling into question the validity of a contract of insurance . . . the amount-in-controversy is the face value of the policy, but that the rule is otherwise if the question is the applicability of the policy to a particular occurrence. In the latter event, the amount-in-controversy is the value of the underlying claim).[3] Accordingly, the jurisdictional amount at issue will be measured by the value of the underlying claim.

### B. The Value of the Underlying Claim

In assessing the value of the underlying claim, this Court must assess the "pecuniary result to either party which th[e] judgment may produce." Gov't Employees Ins. Co. v. Lally, 327 F.2d 568, 570 (4th Cir. 1964); see also Nutter v. New Rents Inc., 945 F.2d 398, 400 (4th Cir. 1991). Therefore, this Court must assess the value of the Coopers' claim to Erie for its obligation to indemnify and defend the Coopers against the underlying lawsuit, as well as the pecuniary impact on the defendants if this Court were to rule that their claim is not covered under subject policy.[4]

According to Erie, the amount-in-controversy requirement is met regardless of the standard the Court applies to the inquiry. The Smith Complaint seeks punitive damages, general damages

---

[3] The Court finds Erie's citation to precedent addressing the amount-in-controversy with respect to automobile liability insurance inapposite. [Docket No. 13 n.3].

[4] The cost to the Coopers would be equal to that of Erie because presumably the Coopers would be required to pay the Smith judgment and the cost of the defense if this Court were to find no coverage under the subject policy. It should be noted that the "claim" that is pertinent to the Court's inquiry here is the Coopers' insurance claim to Erie, and not the value of Smith's claims against the Coopers. See Lally, 327 F.2d at 570.

for the annoyance and inconvenience claim, attorneys fees and costs, and $4,925.59 in special damages. [Docket No. 13, p.3 ¶ 1]. In addition, Erie asserts that this Court must consider the costs associated with defending the Smith lawsuit. Id. To support its position, Erie relies heavily on Weddington v. Ford Motor Credit Co., 59 F. Supp. 2d 578 (S.D. W. Va. 1999). In Weddington, the Court found that the amount-in-controversy requirement was met despite only $16,000 in specified damages. 59 F. Supp. 2d at 584. There, the plaintiffs alleged that a car dealership forged an installment contract to reflect a $10,000 increase in the vehicle's agreed-to sale price. Id. Upon receiving the alleged forged contract, the plaintiffs refused to pay the difference in premium between what they alleged was the agreed-to price and the price listed on the contract. Id. at 580. The dealership repossessed the car and reported it as "repossessed" on the plaintiff's credit report and profiles. Id. These reports resulted in the dissemination of alleged false information that were published with the National Credit Networks, local credit bureau affiliates and other entities. Id. In addition, the plaintiff also requested an unspecified amount of damages for mental anxiety, suffering, annoyance and humiliation, and for attorneys fees and costs. Id. After considering the impact of a tarnished credit report, the costs of litigation and attorneys fees, as well as the specified $16,000 in special damages, the Court held that the plaintiff had demonstrated the requisite jurisdictional amount. Id.[5]   Here, there are several variables that *could* result in the value of the Coopers' claim exceeding $75,000.00. First, the Court must consider the costs of defending the Smith lawsuit. [Docket No. 26]. To date, the parties are engaged in active discovery and have

---

[5] It is important to note here that the Weddington Court found jurisdiction under the less stringent preponderance of the evidence standard. Here, the Court must accept Erie's value of the underlying claim unless it appears to a legal certainty that the Coopers' claim is really for less than the jurisdictional amount to justify dismissal.

recently disclosed expert witnesses. [Docket Nos. 31 and 32]. Second, the $4,925.59 in special damages are based on estimates submitted by contractors and not the actual cost of repair. It is possible, even probable, that the actual cost of repair will exceed the estimates, specifically, Smith has asserted that the plumbing pipes and components beneath the condominium unit are defective, and that the surface water runoff on the exterior of the condominium has caused flooding and water damage within the condominium unit. If the Court determines that the Coopers' claim is covered under the Erie policy, Erie will in all likelihood be liable for the actual, and not estimated, cost of repair. In addition, the unspecified damage award for annoyance and inconvenience, as well as the possibility that this case may proceed to trial creates the possibility that Erie's obligation to indemnify the Coopers may exceed the requisite jurisdictional amount.[6]

"Jurisdiction itself is a legal conclusion, a consequence of facts rather than a provable fact. The Supreme Court of the United States made that clear in St. Paul Mercury, holding that the sum claimed by the proponent of jurisdiction controls if the claim is apparently in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." Meridian Sec. Ins. Co. v. Sadowski, 441 F.3d 536, 540-41 (7th Cir. 2006). In sum, Erie's estimate of the value of the Coopers' claim must be accepted unless this Court can find, to a "legal certainty," that the value of the underlying claim is below the statutory threshold of

---

[6] The parties agree that Erie is not obligated to indemnify the Coopers for any possible punitive damage award. [Docket No. 1. Ex. A p.16; Docket No. 12 p.3 n.1; Docket No. 13 p.3 n.2]. Thus, the Court need not consider the pecuniary impact that a punitive damage award may have on the value of the Coopers' underlying claim because the subject policy excludes coverage for punitive damages. [Docket No. 1 Ex. A. ¶ 12].

$75,000.  St. Paul Mercury Indem. Co., 303 U.S. at 288-89 (1938); Friedman's Inc., 290 F.3d at 191 (4th Cir. 2002).  The Court cannot do so here.

Accordingly, the defendants' motion to dismiss [Docket No. 11] is **DENIED.**

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

**IT IS SO ORDERED.**

ENTERED:    September 8, 2006

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE