**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BECKLEY DIVISION**

ERIE INSURANCE PROPERTY
AND CASUALTY COMPANY,

            Plaintiff,

v.                               CIVIL ACTION NO.  5:05-cv-01137

JUANITA SMITH, et al.,

            Defendants.

**OPINION & ORDER**

This is an action for declaratory relief brought by the plaintiff, Erie Insurance Property and Casualty Company ("Erie") against its policy holders, Kenneth and Gwendolyn Cooper ("the Coopers") pursuant to 28 U.S.C. § 2201 and 28 U.S.C. § 1332.  Specifically, Erie seeks a declaration that it is not obligated to indemnify or defend the Coopers for any losses incurred as a result of a lawsuit brought against them by Juanita Smith, the purchaser of the Coopers' condominium.

Before this Court are plaintiff's motion for summary judgment [Docket No. 26], defendants' opposition thereto [Docket No. 28] , plaintiff's motion to strike that opposition as untimely [Docket No. 29] and defendants' supplemental motion to dismiss [Docket No. 20].  In short, Erie seeks a declaration that it is not obligated to defend or indemnify the Coopers because the factual predicate of the underlying Smith lawsuit does not allege an "occurrence" that would trigger coverage under the Coopers' policy.  [Docket No. 1 ¶ 43].

## I.  FACTS

The facts of this case are set forth in a memorandum of decision issued by this Court on September 8, 2006 [Docket No. 33] but are included again here for context and clarity.  The Coopers, residents of Beckley, West Virginia and Erie Insurance Company, a Pennsylvania corporation, executed a "Homeowners Condocover Insurance Policy," policy number Q54 6200363, on June 12, 2003 for a term of one year  (hereinafter "the policy"). [Docket No. 1 Ex. 1 p.1].  This condominium insurance policy provided that the Coopers would be indemnified for any "occurrence" that triggered coverage under the policy, with a policy limit of $300,000 for each occurrence.  Id.

On April 29, 2004, Juanita Smith entered into a contract of sale with the Coopers for the purchase of the Coopers' condominium located at 606 Sapphire Lane in Beckley, West Virginia. [Docket No. 1 Ex. 1 p.39].   At that time, the Coopers executed a "Seller's Property Disclosure Statement," which stated that the Coopers had no knowledge of "any leaks, backups, or other problems relating to any plumbing, water, and sewage related items." [Docket No. 1 Ex. 1 p.40]. On June 1, 2004, the Coopers and Juanita Smith executed the deed of conveyance and Ms. Smith became the owner of 606 Sapphire Lane.

Soon thereafter, Ms. Smith filed a complaint in the Circuit Court of Raleigh County, West Virginia, alleging, *inter alia*, that the Coopers intentionally failed to disclose to her certain defects during the sale of 606 Sapphire Lane ("Smith lawsuit"). [Docket No. 1 Ex. 1 p.43-44]. Specifically, Ms. Smith alleged that the "plumbing pipes and components beneath the condominium unit were installed with an improper backfall" and "the surface water runoff on the exterior of the condominium unit caused flooding in the condominium unit." [Docket No. 1 p.3 ¶ 15].  The Smith

complaint seeks $4,925.59 in special damages, an unspecified damage award for annoyance and inconvenience, punitive damages, and attorneys fees and costs. [Docket No. 1 Ex. 1 p. 42 ¶¶ 22-27]. Once on notice of the suit, the Coopers forwarded the Smith complaint to Erie, requesting that Erie provide a defense and indemnify them for any liability they might incur as a result of the Smith lawsuit.

On December 9, 2005, Erie filed this declaratory judgment action. In sum, Erie seeks a declaration that it is not obligated to defend or indemnify the Coopers because the factual predicate of the Smith lawsuit does not allege an "occurrence" that would trigger coverage under the Coopers' policy. [Docket No. 1 ¶ 43]. On September 8, 2006, the Court denied the defendants' motion to dismiss for lack of subject matter jurisdiction [Docket No. 11]. Shortly thereafter, plaintiff filed the instant motion for summary judgment [Docket No. 26].

## II. STANDARD OF REVIEW

Rule 56(c) of the Federal Rules of Civil Procedure provides that a court shall grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his case and does not make, after adequate time for discovery, a showing sufficient to establish that element. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of their position. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Id. at 250-251.

However, it is well established that the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the nonmoving party. Id. If factual issues exist that can only be resolved by a trier of fact because they may reasonably be resolved in favor of either party, summary judgment is inappropriate. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); see also Pulliam Inv. Co., Inc. v. Cameo Props., 810 F.2d 1282, 1286 (4th Cir. 1987).

### III. ANALYSIS

The law of West Virginia controls the construction of the policy and Erie's duty to defend the Coopers in this diversity action. Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co., 386 F.3d 581, 599-600 (4th Cir. 2004) (citing Erie R.R. v. Tompkins, 304 U.S. 64, 79 (1938)).

#### a. Duty to Indemnify

It is well-settled law in West Virginia that "language in an insurance policy should be given its plain, ordinary meaning." Aluise v. Nationwide Mut. Fire Ins. Co., 625 S.E.2d 260, 267 (W. Va. 2006). Further, "[w]here the provisions in an insurance policy contract are clear and unambiguous they are not subject to judicial construction or interpretation, but full effect will be given to the plain meaning intended." Id.; see Keffer v. Prudential Ins. Co., 172 S.E.2d 714, 716 (W. Va. 1970).

Specifically, the insuring clause for "Property Damage Liability Coverage" in the subject policy states:

> We will pay all sums up to the amount shown on the Declarations which anyone we protect becomes legally obligated to pay as damages because of bodily injury or property damage caused by an occurrence during the policy period. We will pay for only bodily injury or property damage covered by this policy.

[Docket No. 1 Ex. A p.16]. "Property damage" is defined as:

    1.       physical injury to or destruction of tangible property, including loss of its use. All such loss of use shall be deemed to occur at the time of the physical injury that caused it.

    2.       loss of use of tangible property which is not physically injured or destroyed. All such loss of use shall be deemed to occur at the time of the occurrence.

[Docket No. 1 Ex. A p.7]. "Bodily Injury" is defined as "physical harm, sickness or disease, including mental anguish or resulting death, but does not include:"

    1.       any communicable disease or condition transmitted by anyone we protect to any other person through a parasite, virus, bacteria or any other organism.

    2.       the exposure to or transmission of any disease, parasite, virus, bacteria or other organism by anyone we protect to any other person.

[Docket No. 1 Ex. A p.6]. The insuring clause for the "Personal Injury Liability Coverage" of the subject policy states:

> We will pay all sums up to the amount shown on the Declarations which anyone we protect becomes legally obligated to pay as damages because of personal injury caused by an offense committed during the policy period. We will pay for only personal injury covered by this policy.

[Docket No. 1 Ex. A p.16]. "Personal Injury" is defined as an injury arising out of:

    1.       libel, slander or defamation of character;

    2.       false arrest, wrongful detention or imprisonment, malicious prosecution, racial or religious discrimination, wrongful entry or eviction, invasion of privacy, or humiliation caused by any of these.

[Docket No. 1 Ex. A p.7]. Finally, an "occurrence" is defined as: "an accident, including continuous or repeated exposure to the same general harmful conditions." [Docket No. 1 Ex. A p.7].

In <u>Aluise v. Nationwide Mutual Fire Insurance Co.</u>, the West Virginia Supreme Court of Appeals addressed whether a similar homeowner's policy provided coverage for economic loss cause by an insured's failure to disclose a defect during a sale of a covered property. The Court held:

> that [] absent policy language to the contrary, a homeowner's policy defining occurrence as *bodily injury or property damage resulting from an accident* does not provide coverage for an insured [] who is sued by a home buyer for economic losses caused because the insured negligently or intentionally failed to disclose defects in the home.

625 S.E.2d at 268-269 (internal quotations omitted) (emphasis added). Erie contends that <u>Aluise</u> controls the Court's inquiry. While the definition of occurrence in <u>Aluise</u> is not identical to the definition of occurrence here, the two are not different in kind. Both polices define an "occurrence" as an "accident", which by definition involves an unforeseen and unplanned event or circumstance. Thus, the Court agrees that the <u>Aluise</u> decision applies to the case at bar.

Here, as in <u>Aluise</u>, Ms. Smith seeks damages for economic losses she sustained as a result of the alleged intentional failure of the Coopers to disclose defects about their condominium at the time of sale. Thus, her alleged loss is pecuniary in nature because "[t]he damages for such claims, if proven, would be the difference between the market value of the property at the time of purchase and the amount actually paid." <u>See</u> <u>Aluise</u>, 625 S.E.2d at 270.

The Smith complaint does not involve allegations of physical injury to or destruction of tangible property, nor does it allege the loss of use of tangible property that resulted from an accident or repeated exposure to a harmful condition. It involves allegations of intentional misrepresentation during the sale of a condominium, a harm that arose not from injury to the property itself, but from the Coopers' alleged failure to disclose the present condition of the property

to the buyer. Thus, Ms. Smith's allegations do not fall within the definition of property damage as defined by the policy.

Nor does the Smith Complaint allege facts that would trigger coverage for bodily injury as defined by the policy. The complaint is void of any reference to physical harm, sickness, disease or mental anguish. The complaint does seek damages for Ms. Smith's annoyance and inconvenience, but the policy does not provide coverage for loss caused by annoyance-type claims. In addition, Ms. Smith's losses are grounded in allegations of the Coopers' intentional conduct, not by an unforseen accident or unplanned event.

Although the policy's personal injury provision does include coverage for specific tortious conduct, such as false arrest and wrongful detention, the definition is silent as to fraud and misrepresentation. Accordingly, under Keffer, this Court cannot constructively read those torts into the language of that provision. 172 S.E.2d at 716.

Ms. Smith's allegations of intentional misrepresentation do not constitute an occurrence under the subject policy because intentional conduct, by definition, is not accidental. "As one court appropriately noted, to find [that] coverage exist[s] in this case would be to find that based on an act of sale, a homeowner's insurer becomes the warrantor of the condition of the insured property. This is not the type of coverage which is contemplated by a homeowner's policy." Aluise, 625 S.E.2d at 269 (internal citations omitted). Put simply, Erie did not become a warrantor of the property upon sale because it did not assume the risk of intentional misrepresentation when it insured the Coopers' property.

b. Duty to Defend

Erie also contends that it has no duty to defend the Coopers in the underlying suit. An insurance company's duty to defend an insured, however, is broader than the duty to indemnify under a liability insurance policy. Bowyer v. Hi-Lad, Inc., 609 S.E.2d 895, 912 (W. Va. 2004). The West Virginia Supreme Court of Appeals has held that "[a]s a general rule, an insurer's duty to defend is tested by whether the allegations in the plaintiff's complaint are reasonably susceptible of an interpretation that the claim may be covered by the terms of the insurance policy." Aetna Cas. & Sur. Co. v. Pitrolo, 342 S.E.2d 156, 160 (1986). Ms. Smith's alleged damages are pecuniary in nature and, as discussed above, constitute neither property damage nor personal injury or bodily injury as defined under the subject policy. Consequently, the allegations contained in the Smith Complaint do not meet the "reasonably susceptible" standard as set forth in Aetna. See Aluise, 625 S.E.2d at 269-270 ("for a duty to defend to exist, there must be allegations in the complaint which would fall within coverage afforded under the policy"). As a final matter, there is no provision in the policy that insures the type of pecuniary loss alleged by Ms. Smith. Id. (citing Qualman v. Bruckmiester, 471 N.W.2d 282, 284-285 (Wis. 1991)). Accordingly, there is no duty to defend under the subject policy.

## IV. CONCLUSION

For the reasons stated herein, the Court **GRANTS** Erie's motion for summary judgment [Docket No. 26] and **DENIES** Erie's motion to strike defendants' opposition [Docket No. 29]. In addition, the Court **DENIES** defendants' supplemental motion to dismiss [Docket No. 20] for reasons set forth in its September 8, 2006 Order [Docket No. 33]. The Court **DIRECTS** the Clerk

to send a certified copy of this Opinion and Order to counsel of record and to any unrepresented party.

    **IT IS SO ORDERED.**

                      ENTER: December 15, 2006

                      THOMAS E. JOHNSTON
                      UNITED STATES DISTRICT JUDGE